**Andrea D. Coit, OSB #002640**
acoit@eugenelaw.com
**Jonathan M. Hood, OSB #133872**
jhood@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:    (541) 686-9160
Facsimile:    (541) 343-8693
Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **UNIVERSITY OF OREGON**, individually and in its capacity as the Assignee of the rights of the Estate of Eliborio Rodrigues, Jr., <br><br> Plaintiff, <br><br> vs. <br><br> **TROY PHILLIPS,** an individual**,** <br><br> Defendant. | Case No.     6:21-cv-00619 <br><br> **COMPLAINT** <br> **(42 U.S.C. § 1983; Indemnity)** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff University of Oregon alleges as follows:

**PARTIES**

1.

Plaintiff is a public university organized under the laws of the State of Oregon.  Plaintiff appears herein in its own capacity to assert a claim of common law indemnity, and in its capacity as the assignee of the rights of the Estate of Eliborio Rodrigues, Jr., (Rodrigues) to assert claims of the violation of his rights under the United States Constitution pursuant to 42 U.S.C. § 1983.

2.

At all times material, Defendant Troy Phillips was an employee of the University of Oregon, working as an officer for Plaintiff's police department.  Defendant is named herein in his individual capacity.

1 –   COMPLAINT

## JURISDICTION AND VENUE

3.

This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Plaintiff's state law indemnity claim arises out of the same case or controversy, yet the federal claims predominate. This Court therefore has jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367(a).

4.

Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Plaintiff and Defendant are both residents of Lane County, Oregon and all events giving rise to this action occurred in Lane County, Oregon.

## STATEMENT OF FACTS

5.

On the evening of October 27, 2018, Defendant Troy Phillips was on-duty working as a police officer for Plaintiff's police department. Defendant was wearing a uniform and badge, signifying his position as a police officer, operating a department owned and marked police vehicle, and was armed with a department-issued taser and handgun.

6.

While traveling north on Agate Street in Eugene, Oregon, between East 13th and East 15th Avenues, Defendant came upon from behind a Hispanic man, later identified as Eliborio Rodrigues Jr., riding a bicycle in the street's designated bicycle lane. Though having no reasonable suspicion that Rodrigues had engaged in or was engaging in criminal activity, Defendant turned his vehicle around and pursued Rodrigues. Defendant initiated a stop of Rodrigues by activating his police car's overhead emergency lights, activating its siren and stating over a loud-speaker that Rodrigues must stop.

7.

Rodrigues stopped his bicycle on the sidewalk of Agate Street within 15 seconds of Defendant's instruction to do so. Rodrigues did not first accelerate, change direction, or give

other indication of an intent to escape. Upon stopping, Rodrigues stood calmly, straddling his bicycle as Defendant exited his police vehicle and approached him.

8.

For no justifiable reason, Defendant pulled his handgun and pointed it at Rodrigues as he approached him. Defendant immediately demanded to know why Rodrigues did not stop when Defendant activated his siren. Rodrigues, motioning to a small speaker in his hand, explained to Defendant that he had not initially heard the siren due to music he was playing. Defendant noticed that Rodrigues had a knife in a sheath attached to his waistband. Upon seeing the knife, Defendant repeatedly ordered Rodrigues to get down on the ground. Rodrigues held both of his hands in the air, holding a small bag in one and a small speaker in the other, stating that he did not want to sit on the ground, which was wet at the late hour in October, and that he wanted to speak with a supervisor. Defendant yelled to Rodrigues that he needed to get on the ground because he was armed with a knife and not following his orders. Rodrigues, with his hands still in the air, again calmly noted that the knife was in a sheath.

9.

Defendant informed Rodrigues that he would be tased if he did not get on the ground, and told his cover officer to "go lethal." In response, Rodrigues pleaded: "No. Please sir. You see my hands. Get your sergeant." He did not raise his voice, move his hands from the air, or move away from Defendant. Defendant yelled at Rodrigues that he was under arrest. Rodrigues stated: "You can't do that to me. Let me – I couldn't hear due to the music." At that moment, the sound of the police sirens of approaching officers became audible. Despite the imminent arrival of back-up, and only 40 seconds into the encounter, Defendant tackled Rodrigues to the ground, employing force in doing so that was not reasonable.

10.

Defendant handcuffed and arrested Rodrigues without probable cause for arrest.

3 –   COMPLAINT

11.

After arresting Rodrigues, Defendant prepared three or more reports, including a probable cause report, an incident/investigation report and a use of force report.  One of the purposes for the probable cause and incident/investigation reports is to transmit the facts underlying the arrest to the prosecuting attorney for potential prosecution. While preparing his investigation/incident report, Defendant reviewed the audio and video recording of the encounter with Rodrigues at least four times.

12.

Defendant intentionally made false statements in his reports regarding Rodrigues's conduct, including reporting that Rodrigues "swerved jaggedly" as though about to enter Defendant's lane of traffic; that Defendant had to "brake heavily" to avoid hitting Rodrigues when he swerved in front of him; that Rodrigues "cut in front of" Defendant in the vehicle lane of travel as he dismounted his bicycle; that Rodrigues was displaying "swerving and jerky sharp movements" and was unable to control his bicycle; that after being tackled by Defendant, Rodrigues "immediately began reaching toward his waistband and knife; and that Rodrigues was actively resisting arrest and "appeared to be attempting to access his weapon."  The audio and video recording of the encounter conclusively demonstrate that the foregoing statements are false.

13.

Defendant failed to disclose in his incident/investigation report that the incident had been audio and video recorded.  The narrative depicted by those recordings is exculpatory for Rodrigues.  Defendant further failed to include in his reports Rodrigues's exculpatory statement that he had not heard the initial command to stop due to his music and the exculpatory facts that Rodrigues was holding items in each of his hands, neither of them a weapon, and that Rodrigues held his hands in the air, well above his waist, the entire time he was on his feet speaking with Defendant.

14.

Defendant's motivation for making the false statements in his reports, and omitting the exculpatory evidence from them, was to fabricate reasonable suspicion for the stop of Rodrigues, to fabricate probable cause for his arrest and to create justification for his use of force.

15.

Defendant submitted his false probable cause and incident/investigation reports to the Eugene municipal prosecuting attorney in an effort to initiate a prosecution of Rodrigues. Defendant knew his reports contained false statements and misrepresentations, omitted exculpatory information, and that they would be relied on by the prosecuting attorney. The prosecuting attorney filed charges against Rodrigues in reliance on the assertions set forth by Defendant in his reports.

16.

The day prior to Rodrigues's trial, the prosecuting attorney emailed Defendant, asking if there was a video recording of the incident with Rodrigues. Defendant intentionally ignored that email and did not disclose the existence of the audio and video recordings to the prosecuting attorney prior to the trial. Had he done so, the prosecuting attorney would not have proceeded with the prosecution of Rodrigues.

17.

Defendant was called to testify as a witness against Rodrigues at the trial of the charges stemming from Defendant's arrest of him. Defendant was placed under oath and swore to tell the truth. Defendant did not tell the truth in his testimony. Rather he repeated the false statements made in his reports and intentionally omitted the exculpatory evidence.

18.

Upon discovery, Plaintiff thoroughly investigated Defendant's actions with relation to Rodrigues. Plaintiff concluded that Defendant had engaged in the egregious misconduct described above. Plaintiff terminated Defendant's employment on November 25, 2019, because of that misconduct and reported Defendant's untruthfulness to the Lane County District Attorney.

5 –   COMPLAINT

19.

Rodrigues served a tort claim notice on Plaintiff on April 4, 2019, giving notice of his intent to bring tort claims against Plaintiff based on the October 27, 2018, encounter with Defendant.  Rodrigues died in November 2019.  Rodrigues's estate served a subsequent tort claim notice on Plaintiff on April 17, 2020, indicating its intent to pursue additional claims against Plaintiff arising from Defendant's actions in providing false reporting and testimony and pursuing a criminal conviction against Rodrigues based on that false reporting and testimony.

20.

On October 26, 2020, Plaintiff, Defendant and the Estate of Rodrigues entered into an agreement to toll the statute of limitations on Rodrigues's claims until April 26, 2021.

21.

Plaintiff and the Estate of Rodrigues have entered into a settlement agreement, signed on April 21 and April 20, 2021, respectively.  Pursuant to the terms of that agreement, Plaintiff agreed to pay the Estate of Rodrigues a total of $115,000.00 in exchange for Rodrigues's agreement not to pursue any claims against Plaintiff or Defendant arising out of or related to his encounter with Defendant on October 27, 2018.  Pursuant to that agreement, $15,000.00 of the settlement amount was paid to compensate Rodrigues for his damages related to Defendant's use of excessive force against him.  Pursuant to the terms of that agreement, the Estate of Rodrigues agreed to assign, and did assign, all of its remaining claims against Defendant to Plaintiff for the remaining settlement amount of $100,000.00.

## FIRST CLAIM FOR RELIEF

**(Plaintiff as Assignee for the Estate of Rodrigues)**

**42 U.S.C. § 1983 -
Unlawful Seizure in Violation of Plaintiff's Fourth Amendment Rights**

22.

Plaintiff realleges each of the foregoing paragraphs.

6 –   COMPLAINT

23.

At all material times, Defendant was acting under color of law in his capacity as a police officer for the University of Oregon police department.

24.

The Fourth Amendment to the United States Constitution protects persons from being subjected to unreasonable seizures by the police.

25.

A "seizure" occurs when a police officer restrains a person in some way, either by means of physical force or by a show of authority that the person obeys. Depending on the level of restraint employed, a seizure must be based upon either reasonable suspicion or probable cause that a crime has been committed.

26.

Defendant seized Plaintiff when he stopped him by engaging his police car lights, sounding his siren, and demanding that Plaintiff stop over his loudspeaker. Plaintiff obeyed Defendant's show of authority and stopped. Defendant did not have reasonable suspicion at the time he stopped Plaintiff to believe that Plaintiff had engaged in criminal activity. This seizure violated Plaintiff's rights under the Fourth Amendment.

27.

Defendant further seized Plaintiff when he pointed his handgun at him, tackled him to the ground, caused him to be placed him in handcuffs, and informed him that he was under arrest. Each of the foregoing actions, alone and in combination, constitutes an arrest of Plaintiff. Defendant did not have probable cause to believe that Plaintiff had engaged in criminal activity at the time he arrested Plaintiff. This seizure also violated Plaintiff's rights under the Fourth Amendment.

28.

As a direct result of Defendant's violation of his Fourth Amendment rights, Plaintiff suffered mental distress, including extreme fear, embarrassment, and humiliation. Plaintiff's

non-economic damages are valued at $100,000.00. In addition, Plaintiff has suffered economic damages in an amount to be proven at trial.

29.

Plaintiff is entitled to an award of its reasonable attorney fees incurred in the pursuit of this claim pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**

**(Plaintiff as Assignee for the Estate of Rodrigues)**

**42 U.S.C. § 1983 –**
**Malicious Prosecution in Violation of Plaintiff's Fourth Amendment Rights**

30.

Plaintiff realleges the allegations set forth above.

31.

At all material times, Defendant acted under color of state law in his role as a police officer for the University of Oregon police department.

32.

By preparing the probable cause and incident/investigation reports identified in paragraphs 11 and 12, above; submitting those reports to the City of Eugene Municipal Attorney for purposes of prosecution; and testifying at Rodrigues's trial on the charges for which Defendant arrested him, Defendant initiated or caused to be initiated a criminal proceeding against Plaintiff.

33.

The criminal proceeding Defendant initiated or caused to be initiated ended in Plaintiff's favor when he was acquitted of all criminal activity, found only to have engaged in a violation.

34.

Defendant had actual knowledge that the factual allegations he included in his reports and testified to at trial to support the charges of criminal activity against Plaintiff were false and/or misleading. Defendant was also aware that he omitted exculpatory evidence from his reports and

testimony and hid the existence of the audio and video recordings of his encounter with Plaintiff from the prosecuting attorney. Because the audio and video recordings conclusively contradict Defendant's reports, the prosecuting attorney would not have proceeded with the prosecution had he known of their existence. As such, the criminal proceeding Defendant initiated or caused to be initiated against Plaintiff was without probable cause.

35.

The criminal prosecution was maliciously initiated or caused to be initiated by Defendant to cover up his own misconduct in his interaction with Plaintiff.

36.

As a result of Defendant's conduct, Plaintiff was taken to jail and he was required to appear at trial. Such deprivations of Plaintiff's liberty constitute a seizure as a consequence of a legal proceeding.

37.

As a direct result of Defendant's malicious prosecution, Plaintiff has suffered mental distress, including extreme fear, embarrassment and humiliation. Plaintiff's non-economic damages are valued at $100,000.00. As a further consequence of Defendant's malicious prosecution, Plaintiff has suffered economic damages in an amount to be proven at trial.

38.

Plaintiff is entitled to an award of his reasonable attorney fees incurred in the pursuit of this claim pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

**(Plaintiff as Assignee for the Estate of Rodrigues)**

**42 U.S.C. § 1983 –**
**Fabrication of Evidence in Violation of Plaintiff's Fourteenth Amendment Rights**

39.

Plaintiff realleges the allegations set forth above.

40.

At all material times, Defendant acted under color of state law in his role as a police officer for the University of Oregon police department.

41.

The Fourteenth Amendment protects against a person being subjected to criminal charges on the basis of false evidence that was deliberately fabricated by law enforcement or as a result of the failure to disclose exculpatory evidence.

42.

As set forth above, Defendant fabricated evidence when he prepared and submitted his reports containing factual allegations he knew were false, and when he testified at Plaintiff's trial consistent with his reports.  Defendant failed to disclose exculpatory evidence when he omitted such evidence, described above, from his reports and testimony.

43.

Plaintiff was criminally charged and prosecuted entirely based on the false statements of criminal activity set forth in his reports and his trial testimony and the omission from the same of exculpatory evidence.

44.

Defendant's actions violated Plaintiff's Fourteenth Amendment due process rights to be free of criminal charges and prosecution resulting from the fabrication of evidence.

45.

As a direct result of Defendant's violation of Plaintiff's due process rights, Plaintiff has suffered mental distress, including extreme fear, embarrassment and humiliation.  Plaintiff's non-economic damages are valued at $100,000.  As a further consequence of Defendant's conduct, Plaintiff has suffered economic damages in an amount to be proven at trial.

46.

Plaintiff is entitled to an award of his reasonable attorney fees incurred in the pursuit of this claim pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

## INDEMNITY

47.

Plaintiff realleges the allegations set forth above.

48.

Defendant was acting the course of his employment on October 27, 2018, and was cloaked with the authority of a police officer for Plaintiff's police department. At this time, Defendant also was operating a vehicle owned by Plaintiff and was carrying a handgun owned by Plaintiff.

49.

For the reasons set forth above, Defendant was legally obligated to Rodrigues to compensate him for the damages resulting from his illegal actions. Pursuant to ORS 30.265, Plaintiff was also liable to Rodrigues for its employee's conduct.

50.

Plaintiff entered into the settlement agreement identified in paragraph 21, above, with Rodrigues to discharge the legal obligation to compensate Rodrigues for the damages suffered as a result of Defendant's actions. Pursuant to that agreement, Plaintiff paid Rodrigues $115,000.00 to give up all of his rights to pursue Plaintiff or Defendant on any claim arising out of the encounter with Defendant.

51.

As between Plaintiff and Defendant, it is Defendant who engaged in illegal activity giving rise to Rodrigues's damages and who ought to pay for the obligation owed. Plaintiff's act in paying Rodrigues full compensation for his damages in exchange for his agreement not to take any action against Defendant was a benefit to Defendant, valued at $115,000.00. Reducing from that amount the $15,000.00 paid to Rodrigues for his damages arising from Defendant's use of excessive force, a claim Plaintiff agreed to indemnify Defendant for, Defendant is obligated to indemnify Plaintiff in the amount of $100,000.00.

11 –  COMPLAINT

## DEMAND FOR JURY TRIAL

52.

Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that its Complaint be deemed good and satisfactory and that it be awarded the following amounts:

a. On its First, Second and Third Claims for Relief, non-economic damages in the amount of $100,000.00, economic damages in an amount to be determined at trial, and its reasonable costs and attorney's fees incurred herein;

b. On its Fourth Claim for Relief, an award of indemnification in the amount of $100,000.00, and its reasonable costs incurred herein; and

c. For any additional relief the court deems just and equitable.

DATED this 23rd day of April, 2021.

HUTCHINSON COX

By: s/Andrea D. Coit
Andrea D. Coit, OSB #002640
acoit@eugenelaw.com
Telephone: 541-686-9160
Facsimile: 541-343-8693
Of Attorneys for Plaintiff