**Andrea D. Coit, OSB #002640**
acoit@eugenelaw.com
**Jonathan M. Hood, OSB #133872**
jhood@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:   (541) 686-9160
Facsimile:   (541) 343-8693
   Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **UNIVERSITY OF OREGON**, individually and in its capacity as the Assignee of the rights of the Estate of Eliborio Rodrigues, Jr.,<br><br>            Plaintiff,<br><br>    vs.<br><br>**TROY PHILLIPS,** an individual**,**<br><br>            Defendant. | Case No.      6:21-cv-00619<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

Plaintiff, the University of Oregon, opposes Defendant Troy Phillips' Motion to Dismiss and requests that it be denied.  This Response is supported by the Complaint and the following points and authorities.

## INTRODUCTION

The University of Oregon initiated this action against its former employee because he abused the cloak of authority bestowed upon him through his position as a University police officer, his misconduct was intentional and egregious, and he demonstrated the antithesis of what police departments stand for.  Defendant used the authority of his position to bully, intimidate and harass Eliborio Rodrigues.  He violated Rodrigues's civil rights to further his own interests, not for the benefit of the University of Oregon, and certainly not for the benefit of the public he was trusted to serve.  The University was accountable to Rodrigues for Defendant's misconduct

1 –   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

and paid the Rodrigues Estate accordingly.  But now Defendant is accountable to the University, its students and the public it serves.

## BACKGROUND FACTS[1]

On the evening of October 27, 2018, Defendant was on-duty working as a University police officer.  He was wearing a University uniform and badge, operating a University owned and marked police vehicle, and was armed with a University-issued taser and handgun – all of which signified his position as one of the University's police officers.

While traveling north on Agate Street in Eugene, Oregon, between East 13th and East 15th Avenues, Defendant came upon a Hispanic man, later identified as Eliborio Rodrigues Jr., riding a bicycle in the street's designated bicycle lane.  Without reasonable suspicion that Rodrigues had engaged in or was engaging in any criminal activity, Defendant turned his vehicle around and pursued him.  Defendant initiated a stop of Rodrigues by activating his police car's overhead emergency lights, activating its siren and stating over a loud-speaker that Rodrigues must stop.

Rodrigues stopped his bicycle on the sidewalk of Agate Street within 15 seconds of Defendant's instruction to do so.  At no point did Rodrigues accelerate, change direction, or give any indication of an intent to escape.  Upon stopping, Rodrigues stood calmly, straddling his bicycle as Defendant exited his police vehicle and approached him.

For no reason, Defendant pulled his handgun and pointed it at Rodrigues as he approached him, and immediately demanded to know why Rodrigues did not stop when Defendant activated his siren.  Rodrigues, motioning to a small speaker in his hand, explained that he had not initially heard the siren due to music he was playing.  Defendant noticed that Rodrigues had a knife in a sheath attached to his waistband.  Upon seeing the knife, Defendant ordered Rodrigues to get down on the ground.  Rodrigues held both of his hands in the air,

---

[1] The facts set forth in this section are taken from the Complaint.  For purposes of a motion to dismiss, the well-pleaded facts are assumed true.  *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

2 –    PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

holding a small bag in one and a small speaker in the other, stating that he did not want to sit on the ground, which was wet at the late hour in October, and that he wanted to speak with a supervisor. Defendant yelled to Rodrigues that he needed to get on the ground because he was armed with a knife and not following his orders. Rodrigues, with his hands still in the air, calmly noted that the knife was in a sheath.

Defendant informed Rodrigues that he would be tased if he did not get on the ground, and told his cover officer to "go lethal." In response, Rodrigues pleaded: "No. Please sir. You see my hands. Get your sergeant." He did not raise his voice, move his hands from the air, or move away from Defendant. Defendant then yelled at Rodrigues that he was under arrest. Rodrigues stated: "You can't do that to me. Let me – I couldn't hear due to the music." At that moment, the sound of the police sirens of approaching officers became audible. Despite the imminent arrival of back-up, and only 40 seconds into the encounter, Defendant tackled Rodrigues to the ground, employing force in doing so that was not reasonable.

Defendant handcuffed and arrested Rodrigues without probable cause for arrest. After arresting Rodrigues, Defendant prepared three or more reports, including a probable cause report, an incident/investigation report, and a use of force report. One of the purposes for the probable cause and incident/investigation reports is to transmit the facts underlying the arrest to the prosecuting attorney for potential prosecution. While preparing his investigation/incident report, Defendant reviewed the audio and video recording of the encounter with Rodrigues at least four times.

Defendant intentionally made false statements in his reports regarding Rodrigues's conduct, including reporting that:

- Rodrigues "swerved jaggedly" as though about to enter Defendant's lane of traffic;
- Defendant had to "brake heavily" to avoid hitting Rodrigues when he swerved in front of him;
- Rodrigues "cut in front of" Defendant in the vehicle lane of travel as he dismounted his bicycle;

3 –    PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

- Rodrigues was displaying "swerving and jerky sharp movements" and was unable to control his bicycle;
- After being tackled by Defendant, Rodrigues "immediately began reaching toward his waistband and knife; and
- Rodrigues was actively resisting arrest and "appeared to be attempting to access his weapon."

The audio and video recording of the encounter conclusively demonstrate that all the above are false.

Further, Defendant failed to disclose in his incident/investigation report that the incident had been audio and video recorded. The narrative depicted by those recordings is exculpatory for Rodrigues and the failure to disclose it was a *Brady* violation. Defendant further failed to include in his reports Rodrigues's exculpatory statement that he had not heard the initial command to stop due to his music and the exculpatory facts that Rodrigues was holding items in each of his hands, neither of them a weapon, and that Rodrigues held his hands in the air, well above his waist, the entire time he was on his feet speaking with Defendant.

Defendant submitted his false probable cause and incident/investigation reports to the Eugene municipal prosecuting attorney in an effort to initiate a prosecution of Rodrigues. Defendant knew his reports contained false statements and misrepresentations, omitted exculpatory information, and that they would be relied on by the prosecuting attorney. The prosecuting attorney filed charges against Rodrigues in reliance on the assertions set forth by Defendant in his reports.

The day prior to Rodrigues's trial, the prosecuting attorney emailed Defendant, asking if there was a video recording of the incident with Rodrigues. Defendant ignored that email and did not disclose the existence of the audio and video recordings to the prosecuting attorney prior to the trial. Had he done so, the prosecuting attorney would not have proceeded with the prosecution.

Defendant was called to testify as a witness against Rodrigues at the trial, where he was placed under oath and swore to tell the truth. Defendant did not tell the truth in his testimony.

4 –   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Rather, he repeated the false statements made in his reports and intentionally omitted the exculpatory evidence.

After investigating Defendant's actions with Rodrigues, the University concluded that Defendant's actions in falsifying evidence, suppressing exculpatory evidence, and giving false testimony demonstrated a willful and wanton neglect of his duties as a police officer. The University therefore terminated Defendant's employment on November 25, 2019, and reported Defendant's untruthfulness to the Lane County District Attorney.

Rodrigues served a tort claim notice on the University on April 4, 2019, based on his October 27, 2018 encounter with Defendant. Rodrigues died in November 2019. Rodrigues's Estate served a subsequent tort-claim notice on the University on April 17, 2020, indicating its intent to pursue additional claims arising from Defendant's misconduct in providing false reporting and testimony and pursuing a criminal conviction against Rodrigues based on that false reporting and testimony. The University notified Defendant in writing that it would defend and indemnify him against Rodrigues's claim for excessive force, but not against Rodrigues's other claims.[2]

After mediating the claims with Federal Magistrate Judge Thomas Coffin, the University and Rodrigues's Estate entered into a settlement agreement, signed on April 21 and April 20, 2021, respectively. The University agreed to pay Rodrigues's Estate a total of $115,000 in exchange for the Estate's agreement not to (1) pursue claims against the University, or (2) pursue claims against Defendant that it could have been brought against him in his individual capacity. The agreement

---

[2] Although the University found that Defendant used excessive force, that type of claim does not necessarily involve malfeasance or a willful or wanton neglect of duty. In this case, the University could not conclusively find that Defendant's excessive force was malfeasance or a willful or wanton neglect of duty. That is why the University agreed to indemnify and defend Defendant on that claim and only that claim. The University did not agree to indemnify and defend Defendant on any of the other claims alleged in Rodrigues's tort-claim notices because those claims involved malfeasance or a willful or wanton neglect of duty. Rodrigues's tort-claim notices were attached to the representation agreement the University provided to Defendant. Therefore, Defendant knew the claims for which the University would not indemnify and defend him. (Defendant includes the tort-claim notices with his exhibits, but not properly as attachments to the University's representation agreement.)

5 –    PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

also assigned to the University the claims that could have been brought against Defendant in his individual capacity so that the University could pursue those claims. $15,000 of $115,000 was allocated to the excessive force claim. Accordingly, the University is entitled to indemnification from Defendant in the amount of $100,000, which represents the amount of the benefit Defendant received from the University's payment of damages to the Estate caused by his misconduct that is in excess of the excessive force claim, which is the only claim for which the University agreed to indemnify Defendant. Pursuant to the assignment of the claims to the University that could have been brought by the Estate against Defendant in his individual capacity, the University is entitled to pursue Rodrigues's 42 U.S.C. § 1983 claims against Defendant.[3]

## POINTS AND AUTHORITIES

**I.     MOTION TO DISMISS STANDARD**

In reviewing motions to dismiss under Fed. R. Civ. Proc. 12(b)(6), courts must determine whether a plaintiff's complaint contains "sufficient factual matter" that, taken as true, "states a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-9 (2009). Well pleaded facts, as opposed to legal conclusions, are entitled to an assumption of the truth. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If a complaint does contain supporting factual allegations, courts assume their veracity and then determine whether the alleged facts plausibly give rise to an entitlement to relief. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

---

[3] Defendant's motion suggests that neither he nor his counsel were aware of the University's intention to seek indemnification and an assignment of claims until after this lawsuit was filed. *See* Motion to Dismiss, Pg. 6. To support that suggestion, Defendant relies on a typographical error made by attorney Tony Rosta in a different case, wherein he incorrectly stated that "'Karen O'Kasey, for purposes of settlement discussions, represented the University of Oregon and Mr, Phillips . . . .'" *Id*. Defendant's suggestion is incorrect. He and his counsel (Daniel Thenell) participated in the mediation with Judge Coffin. Therefore, they knew the parties' settlement agreement would include the assignment of claims.

6 –    PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**II.     CLAIM FOR INDEMNIFICATION**

    **1.     The University Properly States an Indemnity Claim**

The University seeks indemnification from Defendant for the $100,000 in damages it paid to the Rodrigues Estate to extinguish Rodrigues's claims against the University that were caused by Defendant's intentional misconduct.[4] To state a common law indemnity claim, a plaintiff must allege that a third party made a claim, that the plaintiff reasonably incurred costs in defending or satisfying the claim and that, as between the party seeking indemnity and the indemnitor, the costs incurred ought to be borne by the latter. *Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1182 (D. Or. 1998), aff'd, 185 F.3d 957 (9th Cir. 1999), *citing Martin v. Cahill*, 90 Or. App. 332, 336 (1988).

    Here, the University has alleged well-pleaded facts which, if true, show the following facts.

- Rodrigues asserted various claims against both Defendant Phillips and the University jointly for damages owed to Rodrigues that were caused by Defendant.
- The University agreed to defend, save harmless and indemnify Defendant only for the actions on which Rodrigues's excessive force claims were based;
- The University did not agree to defend, save harmless and indemnify Defendant for Rodrigues's claims arising from Defendant's falsification of evidence, failure to provide *Brady* material, and giving of false testimony.
- Defendant's actions of intentionally falsifying evidence, failing to provide *Brady* material, and giving false testimony constituted malfeasance or a willful or wanton neglect of his duties as a police officer, thus disqualifying Defendant from indemnity on those claims;
- The University paid the Estate of Rodrigues $115,000.

---

[4] As noted above, the University agreed to indemnify Defendant against Rodrigues's excessive force claim, but not for the other claims that would have been alleged against Defendant in his individual capacity. The value of the excessive force claim was $15,000. Accordingly, the University seeks indemnification only for the additional $100,000 it was required to pay for the other claims that would have been brought against Defendant in his individual capacity.

7 –   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

- In exchange for that payment, Defendant's legal obligation to Rodrigues up to the amount of $115,000 was extinguished.
- As between the University and Defendant, the obligation owed to Rodrigues arising from Defendant's malfeasance and/or willful or wanton neglect of his duties as a police officer ought to be discharged by Defendant.

The Complaint, therefore, states a claim against Defendant for indemnity in the amount of $100,000.

### 2. Defendant's Request for Dismissal of the University's Indemnity Claim Should be Rejected Because an Indemnity Claim is not a Tort Claim

Defendant argues that the claim for indemnity must be dismissed because the Oregon Tort Claims Act (OTCA), specifically ORS 30.285, requires that a public entity take the place of the employee in the litigation. He asserts that an "absurdity would result," leaving the current case as "the University of Oregon v. University of Oregon." Defendant's Motion at 7. Critically missing from Defendant's analysis is the fact that the University's indemnity claim is not a tort cause of action that is covered by the OTCA. The dictates of the OTCA, including the substitution of the employer for the employee under certain situations, apply only to <u>torts</u> asserted against public employees and entities. *See e.g., City of Tualatin v. City-County Ins. Services Trust*, 321 Or. 164, 171 (1995) (Holding that the OTCA applies only to tort claims.) A tort is defined in the Act as "the breach of a legal duty that is imposed by law, *other than a duty arising from contract or quasi-contract*, the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy." ORS 30.260 (emphasis added).

Plaintiff is seeking indemnity from Defendant. A claim for indemnity arises in common law when "the indemnitee has only an imputed or vicarious liability because of a special relationship with the actual wrongdoer but is not personally at fault." *United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 398–99 (9th Cir. 1964); *see also United Pac. Ins. Co. v. Truck Ins. Exch.*, 273 Or. 283, 292 (1975) ("A vicariously liable employer has a right to indemnity from the

negligent employee."). As explained in *United Air Lines, Inc.*, "the doctrinal basis for non-contractual indemnity among tortfeasors is unjust enrichment. The right is restitutional in nature, and is based on inherent injustice." 335 F.2d at 399. A claim for common law indemnity based on the tenants of unjust enrichment is *quasi-contractual*, not tortious. *Wilson v. Gutierrez*, 261 Or. App. 410, 414 (2014); *see also Owings v. Rosé*, 262 Or. 247, 261–63 (1972) (stating that "a claim for common-law indemnity is subject to six-year statute of limitations for contract claims.").

Accordingly, under established Oregon law, the University's claim for indemnity is not a "tort claim" to which ORS 30.285 applies. Therefore, based on the University's well-pleaded facts, and drawing all reasonable inference in the University's favor, the University has pleaded an actionable claim for indemnity against Defendant. Defendant's motion to dismiss the University's indemnity claim should therefore be denied.

## III.   ASSIGNMENT OF CONSTITUTIONAL CLAIMS

### 1.   The Assignment of 42 U.S.C. § 1983 Claims in this Case is Appropriate

The Estate of Rodrigues assigned to the University all the claims it could have pursued against Defendant in his individual capacity under 42 U.S.C. § 1983 resulting from Defendant's violations of Rodrigues's Constitutional rights. Under § 1983, compensatory damages are commonly understood to compensate a party for loss or harm sustained. Nominal damages serve a separate function. As distinguished from punitive and compensatory damages, nominal damages are awarded to vindicate rights. *Cummings v. Connell*, 402 F.3d 936, 942 (9th Cir. 2005), amended, No. 03-17095, 2005 WL 1154321 (9th Cir. May 17, 2005). The University's primary purpose in pursuing the assigned § 1983 claims is to deter wrongful conduct like that exhibited by Defendant in order to effectuate the policy underlying § 1983, namely "the prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann,* 436 U.S. 584, 590–91 (1978).

The enforceability of an assignment of civil rights claims to a state institution brought in a 42 U.S.C. § 1983 case has never been analyzed by the Oregon courts. Defendant's assertion that there is a "long standing rule in Oregon [that] plainly bars assignment of the types of claims brought by Plaintiff [§ 1983 claims]" is inaccurate. Defendant's Motion at 7. Indeed, Defendant

does not cite to a single case involving the assignment of any claim to a state institution or other public body, let alone the assignment of civil rights claims to a government institution so that the public body may vindicate the rights of a citizen.

The University acknowledges that civil rights claims are considered personal injury claims, and that Oregon law disfavors the assignment of claims such as those to private individuals or entities because of the inherent risk of champerty and maintenance. "Champerty is the intermeddling of a stranger in the litigation of another, for profit, and maintenance is the financing of such intermeddling." *Groce v. Fidelity General Insurance*, 252 Or. 296, 304-5 (1968). Both are against the public policy of the State of Oregon. *Id.* In the effort to avoid champerty and maintenance, Oregon courts previously followed a judicially-created rule that only claims that would survive the death of the plaintiff were assignable. *See e.g., Sperry v. Stennick*, 64 Or. 47 (1886). However, that wholesale prohibition on the assignment of all genre of personal injury claims began to be questioned by Oregon's courts in the late 1960's. As noted by Professor William Prosser, "apart from historical accident, no rhyme or reason is discernible in these common-law distinctions on whether a claim survives." William L. Prosser, Law of Torts 921–22 (3d Ed. 1964).

In *Geertz v. State Farm Fire*, 253 Or. 307 (1969), the Oregon Supreme Court acknowledged that certain personal injury claims should be assignable in limited situations. Rather than adhere to the outdated absolute prohibition on assignment of personal injury claims, the Court chose to view the case on its particular facts and ask whether the public policy concerns that the rule against assignments was intended to prevent [champerty and maintenance] were present. *Id.*, 253 Or. 309-10. The Court found they were not, allowing the assignment of a personal injury claim from an insured to his insurer. *Id.* Those public policy concerns were also discussed in *Groce, supra*, a case reviewing the assignability of a bad faith claim to the judgment creditor of the plaintiff. Having concluded that there was no longer a recognized general bar to the assignment, *Groce* considered whether allowing an assignment of the claim in that case presented the dangers of champerty and maintenance. 252 Or. at 303–04. Observing that "a

judgment creditor of an insolvent tortfeasor can hardly be called an intermeddling stranger to litigation necessary to pay his judgment," *Groce* held that the assignee had a bona fide interest in the claim, thereby making the assignment permissible under Oregon law. *Id.* 252 Or. at 304–05.

In 1969, the Oregon legislature passed what is now ORS 115.305, a probate statute providing that all causes of action survive to the personal representative, thereby formally abrogating the prior dividing line between assignable and unassignable claims. *Johnson v. Bergstrom*, 284 Or. 343, 347, 587 (1978). Contrary to Defendant's argument on this issue, the Oregon Supreme Court in *Johnson* did not thereafter "maintain the existing rule that …torts affecting personal rights could not be assigned." Defendant's Motion at 9. Rather, the Oregon Supreme Court stated that "it need not decide whether that [1969] legislative policy change [regarding the survivability of claims] meant that a personal injury claim could now be assigned." *Id.*, 284 Or at 347. Instead, the Court chose to again follow the methodology implemented in both *Groce* and *Geertz*, engaging in a case-specific factual evaluation to determine if the assignment in that case would violate the State's public policy interests. The *Johnson* Court ultimately held that a claim for tortious interference with contract could be assigned because it was more akin to a claim impacting property, where economic interests took precedence over subjective, personal injury damages. *Id.*

Similarly, in *Gregory v. Lovlien*, 174 Or. App. 483 (2001), the court determined that the tort of legal malpractice was also a claim that could be assigned under Oregon law. *Gregory* acknowledged that "in *Groce, Geertz,* and *Johnson* [all cited *supra*], the Oregon Supreme Court declined to adopt a broad prohibition on assignments but looked instead to the circumstances of the individual case." *Id.,* 174 Or. App. at 492. *Gregory* rejected the defendant's proposed rule for a blanket prohibition on the assignment of all malpractice claims because such a rule "would bar assignment of malpractice claims even when the assignee has a bona fide interest in the claim and when none of the evils that may flow from such an assignment is present." *Id.,* 174 Or. App. 492. Employing a case-specific factual evaluation of the assignment, *Gregory* found the assignment of the legal malpractice claim in that case to be permissible. *Id.*

11 –   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Accordingly, the current state of Oregon law, as exemplified in *Groce, Geertz, Johnson* and *Gregory, supra*, requires this Court to analyze the specific facts of this case, including both the interest of the assignee in the claims, and the purpose of the assignment, to decide if the assignment offends public policy. If it does not so offend, then the assignment is allowed.

The first inquiry in the analysis is whether the facts as alleged in the Complaint demonstrate that Plaintiff has a bona fide interest in the assigned claims, and is not simply an "intermeddling stranger in the litigation of another, for profit." *Groce*, 252 Or. at 304. In this case, the University pleaded a legitimate interest in pursuing Rodrigues's 42 U.S.C. § 1983 claims against Defendant, its former police officer. The University is a state institution responsible for, *inter alia*, ensuring that its employees do not violate people's civil rights. The facts alleged in the University's Complaint support the reasonable inference that Defendant broke the trust the University placed in him to safeguard Rodrigues's civil rights, the integrity of the justice system, and the public trust placed in police officers. Defendant intentionally falsified the facts of his police report to justify his wrongful arrest of Rodrigues, he hid exculpatory evidence from the prosecutor that the prosecutor was Constitutionally required to disclose to Rodrigues, and he swore to tell the truth as a sworn police officer, but then lied. The injury caused by this conduct is not personal only to Rodrigues. It is shared by the University, the University's community, the general public, and our system of justice as a whole. Far from being contrary to public policy, the University's efforts to pursue Rodrigues's civil rights claims on his behalf will further the primary policy underlying §1983 claims, to "prevent abuses of power by those acting under color of state law." *Robertson* 436 U.S. at 590–91. As a public university, a police department, and member of this community, the University has a bona fide interest in furthering that policy.

The second inquiry is whether the assignments of Rodrigues's § 1983 claims promote champerty and maintenance. The only reasonable inference to draw from the pled facts is that they do not because the evils that may flow from an assignment of a typical personal injury claim to a private person or entity do not exist here. The University seeks no profit at all in this case. It

12 –   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

seeks only to recover the public money it actually spent to make Rodrigues whole from the injuries that Defendant caused. Why? To "vindicate [Constitutional] rights" trampled by Defendant. *See Cummings*, 402 F. 3d at 942. In contrast to the typical personal injury claim, the University seeks as its remedy only an affirmation that the conduct was unjust, and the damages it undeniably incurred to remedy Defendant's wrong. The danger of champerty does not exist in this case because the assignee (the University) is not seeking to profit on the personal injuries of others.

Indeed, the assignment of Rodrigues's § 1983 claims to the University, a state institution, is consistent with the public policy of the State of Oregon, which relies on its public agencies to enforce its civil rights protections. For example, the Oregon Bureau of Labor and Industries (BOLI) has "general jurisdiction and power for the purpose of eliminating and preventing unlawful practices." ORS 659A.800(2). BOLI's powers specifically include the right to "conduct investigations, issue subpoenas and subpoenas duces tecum, administer oaths, obtain evidence and take testimony in all matters relating to the duties required under [ORS Chapter 659A]." ORS 659A.800(4). The Oregon Department of Justice Civil Enforcement Division has the authority to stand in the shoes of a civil plaintiff, enforcing numerous of the State's civil rights and protection statutes. Similarly, the federal government enforces federal civil rights laws through the U.S. Department of Justice; federal employment protection laws through the Equal Employment Opportunity Commission; and fair housing laws through the U.S. Department of Housing and Urban Development.

This is not the case where a profiteering stranger has purchased an assignment of a personal injury claim in the hope of realizing a profit. To the contrary, the University's interests are directly implicated in this case, and the University is acting to further the interests of the citizens of this state by sending a message that the willful violation of civil rights by its police officers will not be reflexively indemnified. Far too many police agencies, for far too long, have written checks to cover the wrongdoing of their officers. The University is solidly committed to defending its employees, including its police officers, when they make mistakes. The University will not violate public policy by paying unconditionally to protect its former officer when that

officer deliberately falsified evidence in order to justify his arrest of a member of our community.

### 2. Contrary Support from this Court

The University acknowledges for the Court that Judge Paul Papak, in a 2015 unreported decision, found that:

> In light of the Oregon courts' care to avoid finding any sort of personal injury claim assignable outside the context of contract for indemnity or any similar context in which issues such as champerty and maintenance are not implicated, I am persuaded that the Oregon Supreme Court would affirm that pure personal injury claims remain unassignable outside such contexts. As such, under *Pony* the Ninth Circuit would hold that Section 1983 claims arising in Oregon are not assignable.

*Wickenkamp v. Steen*, No. 2:15-CV-330-PK, 2015 WL 13237353, at *10 (D. Or. Oct. 1, 2015), report and recommendation adopted, No. 2:15-CV-330-PK, 2015 WL 13238754 (D. Or. Nov. 13, 2015).

Although not binding, the decision of a fellow district court judge may be instructive. But Judge Papak's decision in *Wickenkamp* must be read in the context of the factual background leading up to that decision. When looking at the full factual background of the case, it becomes clear that the proposed assignee of the 42 U.S.C. § 1983 claims in that case had neither a bona fide interest in the claims, nor a legitimate purpose for their pursuit. Rather, the plaintiff was a *pro se* frequent flier in the federal courts, trafficking in frivolous claims on her own behalf and on behalf of many others, seeking to profit therefrom.

In *Wickenkamp v. Steen*, the plaintiff purported to have received various assignments of claims from numerous different people, including a prisoner named "Lloyd Jr." on whose behalf the plaintiff sought to assert claims for various alleged civil rights violations arising from his incarceration at the Union County Jail. Judge Papak described the case as follows:

> Plaintiff pro se Mary Wickenkamp filed this action against defendants Fred Steen ("Steen"), Steve Rogers, Beth Hulse, Tom Hack, Boyd Rasmussen, Lori Lucas, and three Doe defendants on February 25, 2015. Wickenkamp amended her complaint effective

14 –   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

> May 18, 2015, adding Shelly Steen ("Shelly"), Eric Steen ("Eric"), Susan Roberts ("Susan"), and Dana Roberts ("Dana") as additional defendants.1 By and through her amended complaint, Wickenkamp alleges defendants' liability in ten separately pled claims as follows: (i) the liability of Steen to Judith Trackwell ("Judith") under 42 U.S.C. § 1983 for "oppression" and cattle theft, (ii) the liability of Steen, Shelly, and Eric to Judith under Oregon common law for conversion of property (cattle, equipment, and "other materials"), (iii) the liability of Steen and two Doe defendants to LIK, LLC ("LIK"), under Oregon common law for conversion of property (specifically, of horses), (iv) the liability of Steen to LIK under Section 1983 for horse theft, (v) the liability of Steen, Shelly, Eric, and two Doe defendants to LIK under Oregon's racketeering statute for conversion of livestock and possibly for other criminal acts, (vi) the liability of Steen to Lloyd Trackwell, Jr. ("Lloyd Jr."), under Section 1983 for negligence, (vii) the liability of Steen, Rogers, Rasmussen, and Lucas to Lloyd Jr. under Section 1983 for publicly disclosing information gathered from monitoring Lloyd Jr.'s telephone conversations while he was incarcerated, (viii) the liability of Steen, Rogers, Rasmussen, Lucas, and a Doe defendant to Lloyd Jr. under Section 1983 for the conditions of his confinement during his period of incarceration, (ix) the liability of Steen, Rogers, Susan, and Dana to Lloyd Jr. under Section 1983 for the violation of unspecified constitutional rights, and (x) the liability of Hulse and Hack to Lloyd Jr. under Section 1983 for the violation of his constitutional equal protection rights. Wickenkamp seeks actual and punitive damages in unspecified amounts in connection with her claims.

*Wickenkamp* 2015 WL 13237353, at *1. Judge Papak noted that the plaintiff's amended complaint was "voluminous, rambling, and ill-organized," that "Wickenkamp conceded that her first, fourth through sixth, ninth, and tenth causes of action fail as currently alleged to state claims upon which relief can properly be granted, and that it did not appear "that Wickenkamp has made any effort to serve any defendant in this action other than Steen. *Id*., at *3-4.

Furthermore, at this same time Wickenkamp was pursuing *Wickenkamp v. Steen*, she was also pursuing:

- *Wickenkamp v. AC3, Inc.*, No. 3:14-CV-1646-PK, 2015 WL 13672468, at *20 (D. Or. Sept. 28, 2015), report and recommendation adopted, No. 3:14-CV-01646-PK, 2015 WL 7195371 (D. Or. Nov. 16, 2015), in which Judge Papak recommended that "all of Wickenkamp's claims asserted herein should be dismissed without prejudice for lack of standing";

15 –   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

- *Wickenkamp v. Hostetter L. Grp., LLP*, No. 2:15-CV-296-PK, 2015 WL 9948219, at *21 (D. Or. Dec. 3, 2015), report and recommendation adopted, No. 2:15-CV-00296-PK, 2016 WL 393333 (D. Or. Jan. 31, 2016), in which Judge Papak recommended that "for the reasons set forth above, the moving defendants' motion (# 28) to dismiss should be granted in part and denied in part; and,

- *Wickenkamp v. Baum*, No. 2:15-CV-00483-PK, 2015 WL 5686746, at *1 (D. Or. Sept. 22, 2015), in which Judge Papak recommended that Defendants' motion to dismiss [12] should be granted and Plaintiff's claims against Defendants should be dismissed with prejudice."

The facts surrounding the assignment in *Wickenkamp* were so far tilted toward encouraging champerty and maintenance that Judge Papak did not need to engage in a case-specific review to determine that Ms. Wickenkamp's conduct offended the public policy of the State of Oregon. But that is not the case here, where the assignee is a government body seeking to recover only what it actually paid to make a person whole from injuries caused by Defendant – in order to vindicate civil rights. Accordingly, Judge Papak's broad conclusory statement regarding the assignment to Ms. Wickenkamp should not be relied upon in this case.

    **3.**    **If the Court Has Questions About Whether the Assignment of Rodrigues's Section 1983 Claims Implicates the Public Policy Against Champerty and Maintenance, the Court Should Allow the University to File an Amended Complaint that Seeks Only Nominal Damages for the Assigned Claims.**

For the reasons outlined above, the assignment of Rodrigues's civil rights claims to the University does not implicate the policy concerns of champerty and maintenance. But if the Court has any question about that, it should allow the University to file an amended complaint that seeks only nominal damages for the assigned civil rights claims. Nominal damages serve a separate function than punitive and compensatory damages; nominal damages are awarded to vindicate rights. *Cummings v. Connell*, 402 F.3d 936, 942 (9th Cir. 2005), amended, No. 03-17095, 2005 WL 1154321 (9th Cir. May 17, 2005). The University is already entitled to recover the $100,000 it paid on Defendant's behalf to the Rodrigues Estate under its indemnification claim. The University is not seeking double payment of that amount. Rather, the University's primary purpose in pursuing the assigned § 1983 claims on behalf of Rodrigues is to announce the wrongfulness of Defendant's conduct in its effort to effectuate the policy underlying § 1983,

16 –   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

namely "the prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann,* 436 U.S. 584, 590–91 (1978).

Accordingly, if the Court has concerns about whether the assignment of Rodrigues's §1983 claims is valid and enforceable under Oregon law because the assignment of such claims could promote champerty and maintenance in situations like *Wickenkamp*, then the Court should allow the University to eliminate any such concerns by filing an amended complaint that seeks only nominal damages, and not punitive or compensatory damages. The recovery of nominal damages on the civil rights claims is meaningful as a powerful message regarding Defendant's conduct. And the University's willingness to seek only nominal damages for Rodrigues's §1983 claims would be clear evidence that it is not engaging in champerty and maintenance. Accordingly, allowing the University to file an amended complaint should be allowed as an alternative to dismissing the §1983 claims. *See* Federal Rule of Civil Procedure 15(a)(2) (court should freely give leave to amend when justice so requires.").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that Defendant's Motions to Dismiss be denied in their entirety.

DATED this 30th day of August, 2021.

                        HUTCHINSON COX

                        By:    s/Andrea D. Coit
                              Andrea D. Coit, OSB #002640
                              acoit@eugenelaw.com
                              Jonathan M. Hood, OSB #133872
                              jhood@eugenelaw.com
                              Of Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on August 30, 2021, I served or caused to be served a true and complete copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** on the party or parties listed below as follows:

- ☒ Via the Court's Efiling System
- ☐ Via First-Class Mail, Postage Prepaid
- ☐ Via Email
- ☐ Via Personal Delivery
- ☐ Via Facsimile

Daniel E. Thenell
Thenell Law Group, PC
12909 SW 68th Parkway, Suite 290
Portland, Oregon 97223
dan@thenelllawgroup.com
Fax: (503) 372-6496
Of Attorneys for Defendant

HUTCHINSON COX

By: ___s/Andrea D. Coit___
Andrea D. Coit, OSB #002640
Jonathan M. Hood, OSB #133872
jhood@eugenelaw.com
Of Attorneys for Plaintiff