UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNIVERSITY OF OREGON, | Case No. 6:21-cv-00619-MK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| TROY PHILLIPS, | |
| Defendant. | |

**KASUBHAI,** United States Magistrate Judge:

In this action, the University of Oregon ("Plaintiff") brings four claims against Troy Phillips ("Defendant"): (1) in its capacity as assignee of the Estate of Eliborio Rodrigues, Jr., a claim for unlawful seizure in violation of Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983; (2) in its capacity as assignee of the Estate of Eliborio Rodrigues, Jr., a claim for malicious prosecution in violation of Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983; (3) in

its capacity as assignee of the Estate of Eliborio Rodrigues, Jr., a claim for fabrication of evidence in violation of Plaintiff's Fourteenth Amendment rights under 42 U.S.C. § 1983; and (4) an indemnity claim under Oregon state law. First Am. Compl. 6–11, ECF No. 24 ("FAC"). Defendant moves to dismiss all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and requests attorney fees under ORS 20.105. Def.'s Mot. Dismiss 2, 16, ECF No. 9 ("Def.'s Mot."); *see also* Def.'s Suppl. Mot. Dismiss 2, ECF No. 25 ("Def.'s Suppl. Mot."). All parties have consented to jurisdiction by a U.S. Magistrate Judge. *See* ECF No. 15. For the reasons that follow, Defendant's motion to dismiss is DENIED.

## BACKGROUND

The following facts are taken from Plaintiff's FAC and are accepted as true for the purpose of the pending motion. *See* FAC, ECF No. 24.

**A.    Defendant's Encounter with Eliborio Rodrigues, Jr.**

On October 27, 2018, Defendant was on duty working as a police officer for Plaintiff's police department. *Id.* at 2. Defendant wore his uniform and badge, operated a department-owned and marked police vehicle, and was armed with a department-issued taser and handgun. *Id.*

While driving on a local street in Eugene, Defendant began to trail Eliborio Rodrigues, Jr., a Hispanic man riding a bicycle in the street's designated bicycle lane. *Id.* Defendant pursued Rodrigues, activated the vehicle's lights and siren, and ordered Rodrigues to stop. *Id.* Rodrigues stopped his bicycle within fifteen seconds of receiving Defendant's instruction. *Id.* As he approached Rodrigues, Defendant pulled out his handgun, pointed it at Rodrigues, and asked Rodrigues why he did not stop when Defendant activated his siren. *Id.* at 3. Rodrigues pointed at a small speaker in his hand and explained that he did not initially hear the siren due to the music

he was playing. *Id.* Defendant noticed a knife in a sheath attached to Rodrigues's waistband, and repeatedly ordered Rodrigues to get down on the ground. *Id.* Rodrigues then held both of his hands up in the air, holding a small bag in one and the speaker in the other, and explained that he did not want to sit on the ground because it was wet. *Id.* Rodrigues also asked to speak with a supervisor. *Id.* Defendant yelled to Rodrigues that he needed to get on the ground because he was armed with a knife and not following orders, and Rodrigues—still with his hands in the air—noted that his knife was in a sheath. *Id.*

Defendant told Rodrigues that he would be tasered if he did not get on the ground. *Id.* Defendant also told his cover officer to "go lethal." *Id.* In response, Rodrigues pleaded: "No. Please sir. You see my hands. Get your sergeant." *Id.* Defendant then yelled at Rodrigues that he was under arrest. *Id.* Rodrigues told Defendant: "You can't do that to me. Let me – I couldn't hear due to the music." *Id.* With the audible sound of police sirens arriving as back-up, and only forty seconds into the encounter, Defendant tackled Rodrigues to the ground and arrested him. *Id.*

### B.     Prosecution of Rodrigues

After arresting Rodrigues, Defendant prepared reports about the incident and viewed the audio and video recording of the encounter. *Id.* at 4. Plaintiff alleges Defendant made intentionally false statements in his reports that are shown to be false based on the audio and video recording of the encounter. *Id.* In his reports, Defendant failed to disclose that the encounter with Rodrigues had been audio and video recorded. *Id.* Plaintiff alleges that Defendant's motivation for making false statements was to "fabricate reasonable suspicion for the stop of Rodrigues, and to fabricate probable cause for his arrest and to create justification for his use of force." *Id.* at 5.

Defendant submitted his reports to the Eugene municipal prosecuting attorney, who then filed charges against Rodrigues in reliance on the assertions set forth in Defendant's reports. *Id.* The day before Rodrigues's trial, the prosecuting attorney emailed Defendant to ask if there was a video recording of his encounter with Rodrigues. *Id.* Defendant did not respond to the email, nor did he disclose the existence of the audio and video recordings to the prosecuting attorney at any point before Rodrigues's trial. *Id.* During the trial, Defendant was called to testify as a witness. *Id.* Plaintiff alleges Defendant repeated false statements from his reports. *Id.*

### C. Defendant's Termination and Plaintiff's Settlement with the Estate of Rodrigues

Plaintiff later investigated Defendant's actions with respect to Rodrigues and concluded that Defendant had engaged in "egregious misconduct." *Id.* Plaintiff then terminated Defendant's employment on November 25, 2019. *Id.*

Rodrigues served Plaintiff with a tort claim notice on April 4, 2019, giving notice of his intent to bring tort claims against Plaintiff based on Defendant's encounter with Rodrigues. *Id.* at 6. Rodrigues passed away in November 2019. *Id.* On October 26, 2020, Plaintiff, Defendant, and the Estate of Rodrigues entered into an agreement to toll the statute of limitations on Rodrigues's claims until April 26, 2021. *Id.*

In April 2021, Plaintiff and the Estate of Rodrigues entered into a settlement agreement. *Id.* Pursuant to the terms of that agreement, Plaintiff agreed to pay the Estate of Rodrigues a total of $115,000 in exchange for Rodrigues's agreement not to pursue any claims against Plaintiff or Defendant arising out of or related to his encounter with Defendant. *Id.* Pursuant to the terms of the agreement: (1) $15,000 of the settlement amount was paid to compensate Rodrigues for his damages relating to Defendant's use of force against him, and (2) in exchange for the remaining

settlement amount of $100,000, the Estate of Rodrigues assigned Plaintiff all its remaining claims against Defendant. *Id.*

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also, e.g.*, *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke

federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

A motion to dismiss under Rule 12(b)(6) for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

**DISCUSSION**

Defendant argues that Plaintiff's claims should be dismissed because: (1) Defendant is not the proper defendant for state law claims under ORS 30.265; (2) Plaintiff's assignment of claims from the Estate of Rodrigues is invalid and void as a matter of law; (3) Plaintiff's claims for relief fail to state a claim upon which relief can be granted; and (4) absent a federal question, the Court lacks subject matter jurisdiction for Plaintiff's indemnity claim and should remand the case to state court under Fed. R. Civ. P. 12(b)(1). Def.'s Mot. 2, ECF No. 9; *see also* Def.'s Suppl. Mot. 11–12, ECF No. 25. For the reasons that follow, Defendant's motion is DENIED.

**I.      § 1983 Claims**

Defendant argues that (1) Plaintiff's § 1983 claims should be dismissed because there is no valid assignment between Plaintiff and the Estate of Rodrigues, and (2) Plaintiff's § 1983 fabrication of evidence claim should be dismissed because a fabrication of evidence claim is not a distinct cause of action from a malicious prosecution claim. Def.'s Mot. 13–14, ECF No. 9.

Under § 1983, a plaintiff may bring an action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must (1) allege the violation of a right secured by the Constitution and laws of the United States, and (2) must show that the alleged deprivation was committed by a person acting under color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "Dismissal of a § 1983 claim following a Rule 12(b)(6) motion is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element." *Id.* at 1036 (citations omitted).

### A.    Validity of Assignment

"The Supreme Court has construed claims brought under Section 1983 as tort claims for personal injury." *Pony v. County of L.A.*, 433 F.3d 1138, 1143 (9th Cir. 2006), *cert. denied sub nom. Mitchell v. Los Angeles County*, 547 U.S. 1193 (2006) (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999)). The Supreme Court noted that although "the § 1983 remedy encompasses a broad range of potential tort analogies, from injuries to property to infringements of individual liberty[,] . . . Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract." *Wilson v. Garcia*, 471 U.S. 261, 277 (1985). Courts look to traditional common-law principles to resolve questions regarding § 1983. *See Pony*, 433 F.3d at 1143 ("We resolve [a question regarding 42 U.S.C. § 1983] by reference to traditional common-law principles, as we have solved other questions about the principles governing § 1983 actions.") (quoting *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987)) (bracketing in original). To identify the applicable common law principles, courts look to the law of the state where the conduct underlying the § 1983 claim took place. *See, e.g.*, *id.* ("The right to sue in tort for personal injury is non-assignable under California law.").

### 1.    Assignment of Personal Injury Claims in Oregon

Oregon courts have not yet answered the question of whether a personal injury claim can be assigned. Over time, however, Oregon courts have increasingly recognized that tort claims can be assigned in limited situations. *See Gregory v. Lovlien*, 174 Or. App. 483, 487 (2001) (providing a history of assignability). Generally, in Oregon, tort claims relating to a property

interest rather than a personal interest can be assigned. *See, e.g.*, *Johnson v. Bergstrom*, 284 Or. 343, 347 (1978).

In *Groce*, the Oregon Supreme Court resolved the question of whether a plaintiff could bring a lawsuit against a defendant's insurer after the defendant assigned his bad-faith claim against his insurer to the plaintiff. *Groce v. Fidelity General Ins. Co.*, 252 Or. 296, 302 (1968). The Oregon Supreme Court reasoned that, even if the insurer's breach of good faith obligations was tortious, "the cause of action arising from such breach is one that *affects the insured in his property, as distinguished from his person*, and so ought to be as capable of assignment and survival as any other contract right." *Id.* at 302–03 (emphasis added).

In *Geertz*, the Oregon Supreme Court further recognized that personal injury claims could be assigned in limited situations. *See Geertz v. State Farm Fire & Cas.*, 253 Or. 307, 309 (1969). The Oregon Supreme Court explained the reasons for departing from its previous holdings that personal injury claims did not survive a claimant's death:

> Generally it is said that a claim which will not survive the plaintiff's death is not assignable. The reason for this equation between survivorship and assignability is seldom explained. One explanation is that if a claim is so personal that it will not survive it is therefore so personal that it cannot be assigned. It has also been said that the rule developed to avoid maintenance. There are other possible explanations found in the historical development of the survival of tort claims. Whatever reasons there may be for prohibiting the assignment of personal injury claims after an accident, we do not think they apply to a situation where the claim is transferred pursuant to an indemnity contract between insurer and insured. If there are evils that flow from such contracts, we are not aware of them.

*Id.* at 309–10; *see also Lovlien*, 174 Or. App. at 487 ("Rather than adhere to an absolute prohibition on assignments of personal injury claims, the [*Geertz*] court asked whether the public policy concerns that the rule against assignments was intended to prevent were present.").

Similarly, in *Johnson*, the Oregon Supreme Court held that a claim for interference with contract rights could be assigned because it was related to a property interest rather than a personal interest. *See* 284 Or. at 347 ("The reasons of policy against the assignment of personal injury claims have little relevance with respect to property damage claims."). The *Johnson* court noted that the Oregon legislature passed a statute in 1969 providing that all causes of action survive to personal representatives. *Id.* (citing ORS 115.305).[1] However, the court declined to answer whether personal injury claims were now assignable because "the rights acquired by plaintiffs under the assignment involved in this case were of a different nature." *Id.*

In the years that have followed, the Oregon courts have continued to decline to answer this question. Following the reasoning in *Groce* and *Johnson*, the Oregon Court of Appeals held in *Lovlien* that a claim for legal malpractice "more closely resembles claims that are based on injuries to one's property and therefore falls within the general class of tort claims that may be assigned." *Lovlien*, 174 Or. App. at 488. However, the Oregon Court of Appeals left unanswered the question of whether personal injury claims are assignable:

> In 1969, the legislature passed a statute providing that all causes of action survive to the personal representative. *See Johnson,* 284 Or. at 347, 587 P.2d 71. The court explained that it need not decide whether that legislative policy change meant that a personal injury claim could now be assigned. *Id.* . . . Similarly, in this case, because we conclude that the claim at issue here is property related, we need not decide whether personal injury claims may now be assigned.

*Id.* at 488 n.3.

---

[1] Early decisions from state courts outside of Oregon that upheld the common-law rule of non-assignability frequently cited the test of survivorship. *See, e.g.*, *Davenport v. State Farm Mut. Auto Ins. Co.*, 81 Nev. 361, 365 (1965) ("[T]he assignability of the right to sue in tort for personal injuries is governed by the test of survivorship[.]"); *Carlile v. Harbor Homes, Inc.*, 147 Wash. App. 193, 207 (2008) ("The traditional test for whether a cause of action is assignable is whether the claim would survive to the personal representative of the assignor upon death.") (citing *Cooper v. Runnels*, 48 Wash.2d 108, 110 (1955)).

2.  Analysis

"[F]ederal courts are bound by the pronouncements of the state's highest court on applicable state law." *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001), *cert. denied*, 534 U.S. 1133 (2002) (citation omitted). "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986), *modified at* 810 F.2d 1517 (9th Cir. 1987). "In assessing how a state's highest court would resolve a state law question—absent controlling state authority—federal courts look to existing state law without predicting potential changes in that law." *Ticknor*, 265 F.3d at 931 (citing *Moore v. R.G. Industries, Inc.*, 789 F.2d 1326, 1327 (9th Cir. 1986)).

In recognizing that certain personal injury claims could be assignable in limited situations, the Oregon Supreme Court has viewed the particular facts of a case to determine if they implicate the public policy concerns—champerty and maintenance—that the traditional prohibition on assignments was intended to prevent. *See, e.g.*, *Geertz*, 253 Or. at 309–10 ("It has also been said that the [survivability] rule developed to avoid maintenance."); *Groce*, 252 Or. at 303–04 (discussing champerty and maintenance); *see also Lovlien*, 174 Or. App. at 487 ("In *Groce, Geertz,* and *Johnson*, the Oregon Supreme Court declined to adopt a broad prohibition on assignments but looked instead to the circumstances of the individual case.").

Maintenance and champerty are related concepts. *See, e.g.*, *In re Primus*, 436 U.S. 412, 424 n.15 (1978) ("Put simply, maintenance is helping another prosecute a suit; champerty is maintaining a suit in return for a financial interest in the outcome; and barratry is a continuing practice of maintenance or champerty.") (citations omitted); *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 408 (2d Cir. 2018) (noting that assignability of litigation claims "remains

constrained in many jurisdictions by common law prohibitions on maintenance, champerty, and barratry—doctrines that developed to ensure the authenticity of lawsuits and the bona fides and commitment of the parties prosecuting them"). Maintenance is defined as "[i]mproper assistance in prosecuting or defending a lawsuit given to a litigant by someone who has no bona fide interest in the case[.]" *Maintenance*, BLACK'S LAW DICTIONARY (11th ed. 2019). Champerty is defined as an "agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceedings[.]" *Champerty*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Sprint Comm'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 306 n.3 (2008) (Roberts, C.J., dissenting) ("Champerty is a species of maintenance[.]") (internal quotations omitted). Under the Oregon Supreme Court's definitions, "[c]hamperty is the intermeddling of a stranger in the litigation of another, for profit, and maintenance is the financing of such intermeddling." *Groce*, 252 Or. at 304–05 (citation omitted).

The *Groce* court concluded that "[a] judgment creditor of an insolvent tortfeasor can hardly be called an intermeddling stranger to litigation necessary to pay his judgment." *Groce*, 252 Or. at 305. In response to the "argument that the assignment of claims in cases of this kind breeds champerty and maintenance," the Oregon Supreme Court reasoned "it is sufficient to observe that for many years at common law the bona fide assignee of a chose in action has not been deemed guilty of champerty."[2] *Id.* at 304; *see also Lovlien*, 174 Or. App. at 488 ("Having concluded that there was no general bar to the assignment, the [*Groce*] court considered whether

---

[2] A "chose in action" is a somewhat archaic term defined as: "1. A proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or *a claim for damages in tort*. 2. The right to bring an action to recover a debt, money, or thing. 3. Personal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit." *Chose*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).

Page 12 — OPINION AND ORDER

the circumstances of that case presented any of the dangers, such as champerty and maintenance, that justified a rule against assignments and concluded that it did not.") (citing *Groce*, 252 Or. at 303–04).

Here, Defendant argues that: (1) Mr. Rodrigues had no bona fide connection to Plaintiff; (2) champerty and maintenance are not the only public policy concerns implicated in an assignment of personal injury claims under the facts of this case; (3) there exists a risk of abuse in allowing a public employer to "escape any liability . . . by purchasing claims from allegedly injured parties and then placing the entire burden on their employees"; and (4) Plaintiff's "scheme would allow them to subvert the collective bargaining process[.]" Def.'s Suppl. Mot. 6–10, ECF No. 25. In response, Plaintiff argues that: (1) Plaintiff has legitimate interests in the assigned claim that would be achieved with an award of nominal damages; (2) Plaintiff's seeking nominal damages removes all risk of champerty and maintenance; (3) champerty and maintenance are the only recognized public policy factors in assessing the assignment of purely personal injury claims; and (4) Defendant has no legal or otherwise compelling factual basis for asserting there exists a risk of abuse that employers will escape liability or that employers will be able to subvert the collective bargaining process. Pl.'s Suppl. Resp. 5–10, ECF No. 27.

In considering public policy concerns implicated in the assignment of tort claims, the Oregon Supreme Court has limited its discussion to maintenance and champerty. *See, e.g.*, *Groce*, 252 Or. at 305. While this Court recognizes there may be other public policy concerns with respect to the assignability of personal injury claims, the Court declines to expand the scope of public policy considerations because doing so would amount to a prediction of potential changes in Oregon law. *See Ticknor*, 265 F.3d at 931 ("In assessing how a state's highest court

would resolve a state law question—absent controlling state authority—federal courts look to existing state law without predicting potential changes in that law.").

Here, Plaintiff's assignment of rights from the Estate of Rodrigues does not implicate the public policy concerns of maintenance and champerty. First, Plaintiff has a bona fide interest in the litigation both as an employer and as a public institution concerned with the protection of the public's rights. It can hardly be said that Plaintiff is an "intermeddling stranger" because Plaintiff has a direct connection to Mr. Rodrigues as the employer of the police officer who allegedly harmed Mr. Rodrigues. *See Groce*, 252 Or. at 304–05 ("Champerty is the intermeddling of a stranger in the litigation of another, for profit[.]"). Because of this direct connection, and as a public institution, Plaintiff has a bona fide interest in preventing, or holding its employees accountable for, the kind of behavior that allegedly gave rise to Mr. Rodrigues's injuries. Second, Plaintiff does not stand to profit from its § 1983 claims because, as assignee of the Estate of Rodrigues, Plaintiff seeks only nominal damages for the alleged harms Mr. Rodrigues suffered.

For these reasons, and based on existing Oregon state law, the Court concludes that the Oregon Supreme Court would uphold the assignment of this personal injury claim. The Court's holding here is a narrow one, limited to cases in which public institutions, as assignees of personal injury claims, assert § 1983 claims and only seek nominal damages. As such, Defendant's motion is denied as to Plaintiff's § 1983 claims.

### B.   Fabrication of Evidence Claim

Defendant does not challenge Plaintiff's malicious prosecution claim but argues that Plaintiff's fabrication of evidence claim fails to plead a claim upon which relief can be granted

because fabrication of evidence is not a distinct cause of action and simply restates the malicious prosecution claim. Def.'s Mot. 14, ECF No. 9.

To state a claim for deliberate fabrication of evidence, a plaintiff must: (1) point to evidence alleged to have been fabricated, and (2) state facts to show the falsification was deliberate. *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)). "A *Devereaux* claim is a claim that the government violated the plaintiff's due process rights by subjecting the plaintiff to criminal charges based on deliberately-fabricated evidence." *Id.*

To state a malicious prosecution claim, a plaintiff must allege that a defendant prosecuted him: (1) with malice; (2) without probable cause; (3) for the purpose of denying him equal protection or another specific constitutional right; and (4) that criminal proceedings against him have terminated in favor of the accused. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 919 (9th Cir. 2012). Section 1983 claims for malicious prosecution may proceed under theories asserting violations of the Fourth Amendment. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 483–84 (9th Cir. 2007).

The Supreme Court and the Ninth Circuit have never held that a malicious prosecution claim and a fabrication of evidence claim cannot proceed as distinct claims. *Compare McDonough v. Smith*, 139 S.Ct. 2149, 2155 (2019) (noting only that malicious prosecution is the "most natural common-law analogy" for a fabricated-evidence claim) *and Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) ("Among the ways that a plaintiff can rebut a *prima facie* finding of probable cause [in a malicious prosecution claim] is by showing the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith.") (citations omitted) *with Peck v. Hinchey*, 655 Fed.

Page 15 — OPINION AND ORDER

App'x 534, 537 (9th Cir. 2016) (identifying two different causation standards for a malicious prosecution claim and a fabricated evidence claim).

The Court concludes that the two claims are not the same. As such, Defendant's motion is denied as to Plaintiff's fabrication of evidence claim under § 1983.

### C.    Nominal Damages

Defendant argues that Plaintiff cannot seek nominal damages because nominal damages are appropriate only "where a clear violation of a constitutional right has been established, but the plaintiff is *unable or unwilling* to prove any actual damages." Def.'s Suppl. Mot. 4, ECF No. 25. (citations omitted; emphasis in original).

The Court concludes that a plaintiff may seek nominal damages even if that plaintiff proves actual damages. "Compensatory damages and nominal damages serve distinct purposes." *Schneider v. County of San Diego*, 285 F.3d 784, 795 (9th Cir. 2002). "Nominal damages are a purely symbolic vindication of a constitutional right, and are awarded regardless of whether the constitutional violation causes any actual damage." *Id.* (internal quotations, bracketing, and citation omitted). A review of applicable case law demonstrates that plaintiffs may seek nominal damages even if they prove actual damages. *See, e.g.*, *id.* ("We have awarded nominal damages even when a plaintiff has been fully compensated through a different cause of action. In *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) and *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514 (9th Cir. 1999), we awarded the plaintiffs both nominal and compensatory damages for the same injury."). As such, Defendant's motion is denied as to Plaintiff's request for punitive damages.

**II.     State Law Indemnity Claim**

Defendant argues that: (1) he is the wrong defendant for the state law claim because Plaintiff should be substituted for Defendant under ORS 30.265 and ORS 30.285; and (2) substituting Plaintiff for Defendant will result in a legal absurdity and therefore Plaintiff's indemnity claim should be dismissed. Def.'s Mot. 6–7, 15, ECF No. 9; Def.'s Suppl. Mot. 2–3, ECF No. 25. Plaintiff argues that: (1) the indemnity claim is not subject to the Oregon Tort Claims Act ("OTCA") because common-law indemnity claims are quasi-contractual, not tort claims, and (2) Plaintiff has adequately pled facts from which to infer malfeasance or willful or wanton neglect of duty. Pl.'s Suppl. Resp. 2–3, ECF No. 27. In response, Defendant disagrees and argues that the OTCA is "directly relevant because the claims which [Plaintiff] alleges give[] rise to their indemnity cause of action were all torts." Def.'s Reply 4 n.2, ECF No. 22.

"In an action for indemnity, the claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter." *Fulton Ins. v. White Motor Corp.*, 261 Or. 206, 210 (1972). Indemnity "requires that a common duty be mutually owed to a third party." *Citizens Ins. Co. of N.J. v. Signal Ins. Co.*, 261 Or. 294, 297 (1972).

In Oregon, if a tort action "alleges damages in an amount equal to or less than the damages allowed under [the OTCA], the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action against the public body." ORS 30.265(3). In such situations, "the court upon motion shall substitute the public body as the defendant." *Id.* Under ORS 30.285, "[t]he governing body of any public body

shall defend, save harmless and indemnify any of its officers, employees and agents . . . against any tort claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of duty." ORS 30.285(1). However, ORS 30.285(1) "does not apply in case of malfeasance in office or willful or wanton neglect of duty." ORS 30.285(2).

First, the Court finds that Plaintiff's indemnity claim is subject to the OTCA because the underlying claims for which Plaintiff seeks indemnification from Defendant are all tort claims. Second, the Court finds that Plaintiff has adequately pled facts to infer malfeasance in office or willful or wanton neglect of duty. Plaintiff alleges that Defendant "was legally obligated to Rodrigues to compensate him for the damages resulting from his illegal actions." FAC 11, ECF No. 24. Plaintiff further alleges that it "agreed to defend, save harmless and indemnify Defendant only for the actions on which Rodrigues's excessive force claims were based" but that it "did not agree to defend, save harmless, and indemnify Defendant for Rodrigues's claims arising from Defendant's falsification of evidence, failure to provide *Brady* material, and giving of false testimony" because such actions "constituted malfeasance or a willful or wanton neglect of his duties as a police officer, thus disqualifying Defendant from indemnity on those claims." Pl.'s Resp. 7, ECF No. 19. Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in its favor, the Court concludes that Defendant's alleged falsification of evidence, failure to provide *Brady* material, and giving of false testimony are sufficient, if true, to constitute malfeasance or a willful or wanton neglect of duty under ORS 30.285(2). As such, Defendant's motion is denied.

### III.    Attorney Fees

Defendant argues that under ORS 20.105 he is entitled to an award of his fees and costs incurred "fighting this blatantly meritless suit." Def.'s Mot. 15–16, ECF No. 9. Under ORS

20.105, "the court shall award reasonable attorney fees to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding . . . upon a finding by the court that . . . there was no objectively reasonable basis for asserting the claim, defense or ground for appeal." ORS 20.105(1). Because the Court has denied Defendant's motion as to all of Plaintiff's claims, the Court concludes that Plaintiff had an objectively reasonable basis for asserting its claims. As such, Defendant's request for attorney fees under ORS 20.105 is denied.

## CONCLUSION

For the reasons above, Defendant's motion to dismiss (ECF No. 9) and supplemental motion to dismiss (ECF No. 25) are DENIED.

DATED this 24th day of March, 2022.

_s/Mustafa T. Kasubhai_____
Mustafa T. Kasubhai (he/him)
United States Magistrate Judge